2278

Leonard A. WORLEY, Appellant v.
YARBOROUGH FORD, INC., Respondent.
(452 S.E. (2d) 622)

Court of Appeals

*Robert E. Hoskins*, of *Foster & Foster*, Greenville, *for appellant.*

*Harold P. Threlkeld*, Anderson, *for respondent.*

Heard Nov. 1, 1994.

Decided Dec. 12, 1994.

CURETON, Judge:

This is a breach of contract action. The complaint alleges a breach of contract by the respondent, Yarborough Ford, Inc. (Yarborough), in its failure to return a $25,000 earnest money deposit to appellant, Leonard A. Worley. The trial court directed a verdict for Yarborough. Worley appeals. We affirm.

In February 1992, Worley and Yarborough entered into a contract whereby Worley agreed to buy Yarborough's automobile dealership. At the contract's signing, Worley paid Yarborough $25,000 earnest money. The agreement expressly provided that Yarborough had the option of retaining the earnest money if Worley defaulted. The transaction did not close when Worley lost his financial backer. The contract does not mention a financial backer.

The contract contained two terms which Worley contends are dispositive of the issues in this appeal. Those provisions are:

> Buyer shall in good faith diligently and expeditiously pursue the approval of Ford Motor Corporation as required by Seller and Ford Motor Corporation.
> Failure to close as a result of Ford Motor Corporation not approving the franchise transfer shall not be a breach by either party.

As part of the approval process, Ford Motor Corporation required Worley to have available approximately $400,000.[1] Because Worley's financial resources were limited, it was necessary to have a financial backer. Worley testified he initially had a backer at the time the contract was signed. After submitting his application to Ford for the franchise transfer, the backer withdrew his endorsement. Worley testified he then obtained a second backer who subsequently withdrew. As a result, Worley was never able to submit a complete application package to Ford. Consequently, Ford never approved the transfer of the dealership. Yarborough thereafter sold the dealership to another party.

---

[1] Of this sum, approximately $285,000 would go to Yarborough Ford for the purchase of its assets and the remainder would be used by Worley as working capital.

In ruling on a motion for directed verdict, the trial court is required to view the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. The court should deny the motion where either the evidence yields more than one inference or its inferences are in doubt. *Strange v. S.C. Dep't of Highways and Public Transp.*, 314 S.C. 427, 445 S.E. (2d) 439 (1994). Worley argues the court erred in granting Yarborough's directed verdict motion because there is evidence in the record he diligently and expeditiously pursued approval from Ford by attempting in good faith to obtain financial backing for the deal even after he lost his first financial backer.

In construing a contract, the primary concern of the court is to ascertain and give effect to the intent of the parties. *D.A. Davis Constr. Co., Inc. v. Palmetto Properties, Inc.*, 281 S.C. 415, 315 S.E. (2d) 370 (1984). The language of a contract must first be considered in determining the intention of the parties to that contract. *C.A.N. Enter., Inc. v. South Carolina Health and Human Serv. Fin. Comm'n*, 296 S.C. 373, 373 S.E. (2d) 584 (1988). At trial, Worley argued and the court agreed that the agreement was unambiguous. That being the case, there is no need to resort to extrinsic evidence to ascertain the intention of the parties. *Murphy v. Hagan*, 275 S.C. 334, 271 S.E. (2d) 311 (1980).

Ordinarily, the failure of one to perform under a contract because of his inability to obtain financing from a third party on whom he relied to furnish the money will not excuse performance, in the absence of a contract provision in that regard. 17A Am. Jur. (2d) *Contracts* § 680 (1991); *see Marionneaux v. Smith*, 163 So. 206 (La. App. 1935). The question then becomes whether there is a provision in the instant agreement, either express or implied, which provides for the return of Worley's earnest money should he be unable to obtain financing to complete the transaction.[2]

---

[2]While the agreement does not expressly provide for the return of the earnest money, Yarborough agreed that had the transaction not closed due to no fault of Worley, he would have been entitled to the return of his earnest money.

In granting Yarborough's motion for directed verdict, the trial court concluded financing was not a condition precedent to Worley's obligation to perform under the contract and, thus, as a matter of law, Worley breached the terms of the contract by not performing. A condition precedent entails something that is essential to a right of action, as opposed to a condition subsequent, which is something relied upon to modify or defeat the action. 4 S.C. Juris. *Actions*, § 25 (1991). In contract law, the term connotes any fact other than the lapse of time, which, unless excused, must exist or occur before a duty of immediate performance arises. *Ballenger Corp. v. City of Columbia*, 286 S.C. 1, 331 S.E. (2d) 365 (Ct. App. 1985). The question of whether a provision "in a contract constitutes a condition precedent is a question of construction dependent on the intent of the parties to be gathered from the language they employ." *Id.* at 5, 331 S.E. (2d) at 368. After reviewing the agreement, we hold as a matter of law that the agreement contains no express provision or condition that makes Worley's ability to obtain financing a condition precedent to his obligation to perform.

Likewise, we conclude as a matter of law that such a condition precedent should not be implied from the facts of this case. Generally, "a condition precedent may not be implied when it might have been provided for by the express agreement." 17A C.J.S. *Contracts* § 338 (1963); 17A Am. Jur. (2d) *Contracts* § 471 (1991). The evidence is uncontradicted that Worley knew he would need substantial finances to close the deal which he did not personally have. Worley's attorney prepared the contract and could have inserted a provision in the contract to the effect that financing was a condition of his obligation to perform. In fact, Paragraph 8 of the agreement is captioned "Conditions on the Obligations of Parties." Nowhere in Paragraph 8 is Worley's ability to obtain financing a condition of his "obligation" to perform under the contract. Moreover, Worley testified he represented to the president of Yarborough that he had the finances covered through a financial backer before the contract was executed by Yarborough.[3] Thus, it was not in the contem-

---

[3]Yarborough's president testified that he signed the contract based on the representation by Worley that he had adequate financial backing.

plation of Yarborough that financing would be a problem.[4] The availability of financing under the facts of this case should not as a matter of law be implied as a condition of the contract. *Valtrol, Inc. v. General Connectors Corp.*, 884 F. (2d) 149 (4th Cir. 1989) (Implied covenants are disfavored, and must clearly arise from the language used or be indispensable to effectuate the intent of the parties).

Worley also argues the provision regarding diligence in pursuing Ford's approval, taken in conjunction with the provision that failure to close because of Ford's nonapproval would not constitute a default under the contract, could only mean that financing was meant to be a condition precedent to his obligation to perform. We hold otherwise. As noted by Yarborough at oral argument, Ford required more of Worley than mere sufficient financing of the business to qualify as one of its franchise owners. There were also experience, management, character and other personal requirements. The agreement contemplated performance by three persons or entities: Ford, Worley and Yarborough. The arranging of financing was the sole obligation of Worley. Ford's involvement in the transaction was to approve or disapprove the transfer of the franchise based on several considerations, one of which was Worley's financial condition. The good faith and due-diligence provision is in the nature of a promise[5] by Worley to diligently and expeditiously pursue approval from Ford through the submission of appropriate documentation or proof of his financial ability and personal fitness to own and operate the franchise.[6] A breach of the due diligence provision would therefore have constituted a default by Worley and given rise to the default remedies stated in the agreement. Because Yarborough claims no breach of this provision, it has little application to this dispute. *See Hood v. Gordy Homes, Inc.*, 267 F. (2d) 882 (4th Cir. 1959) (Party to

---

[4]In fact, Yarborough's president testified he knew nothing about Worley's financial arrangements to purchase the franchise.

[5]"A promise in a contract creates a legal duty in the promisor and a right in the promisee; the fact or event constituting a condition creates no right or duty and is merely a limiting or modifying factor." 3A *Corbin On Contracts*, § 633 (1951).

[6]Worley does not contend that even if he had the financial wherewithal, Ford would not have approved the franchise transfer. In fact, he testified that everything was in order except for the financing.

contract, which the party had prepared, could not circumvent unambiguous condition in the contract).

Where, as here, Worley represented to Yarborough that he had the financial means to purchase the dealership, which representation was relied on by Yarborough in entering into the sales contract, a subsequent change of his financial circumstances should not serve to excuse performance in the absence of a provision in the agreement to that effect. 17A C.J.S. *Contracts* § 459 (1963). In other words, it would be unfair to burden Yarborough with, and the law will not impose, a financing contingency when such contingency was not bargained for between the parties.

Accordingly, the order of the trial court is

Affirmed.

CONNOR, J., and HOWARD, Acting Judge, concur.