THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Piedmont Cedar Homes and Sunrooms, Inc.,       
Respondent,

 
 
 

 
 v.

 
 
 
Southern Originals, L.L.C.,       
Appellant.

 
 
 

Appeal From Greenville County
C. Victor Pyle, Jr., Circuit Court Judge

 
 Unpublished Opinion No. 2003-UP-113
 Submitted June 3, 2002 - Filed February 12, 2003

REVERSED

 
 
 
J. Thomas Falls, Jr., for appellant. 

T.S. Stern, Jr. and Karen Creech, for respondent. 

 
 
 

PER CURIAM: Southern Originals, L.L.C., appeals a jury verdict 
 awarding Piedmont Cedar Homes and Sunrooms, Inc. $115,000.00 in actual damages 
 for intentional interference with a contract, arguing the trial court erred 
 in failing to direct a verdict or grant a JNOV. We agree and reverse. 

FACTS/PROCEDURAL HISTORY

In 1994 Dan Rogers decided to establish a dealership for distributing home 
 packages manufactured by Lindal Cedar Homes, Inc. and began negotiating with 
 Lindal's southeastern regional manager, Shanna Sheppard. As a result, Rogers 
 purchased a model home business previously operated as a Lindal dealership in 
 Pelzer, South Carolina. 

On May 17, 1994, Rogers submitted a dealer-distributorship form contract to 
 Lindal on behalf of Piedmont Cedar Homes and Sunrooms, Inc., a South Carolina 
 corporation wholly owned by him. Inserted into the typed form agreement were 
 the handwritten words "Area for zip code leads 293**, 296**," which both Sheppard, 
 on behalf of Lindal, and Rogers initialed. The words appeared immediately after 
 a provision in the agreement stating that Lindal may increase a distributor's 
 area of primary responsibility. (1) Under the 
 agreement, Lindal was required to refer Rogers all leads for customers within 
 his area of primary responsibility. Zip code leads described a practice whereby 
 Lindal would refer to a dealer names and addresses of people within a certain 
 zip code who inquired about home packages. Although a dealer's area of primary 
 responsibility remained the same, the zip code leads given by Lindal changed 
 whenever the company gained or lost a dealer in the area. 

Lindal's president, Robert Lindal, reviewed the contract upon receipt from 
 Rogers. Prior to signing the document, he marked through a portion of the handwritten 
 words inserted by Rogers and wrote "zip code leads assigned may exceed AOPR 
 and be changed from time to time." When Rogers received the contract back with 
 Lindal's changes he contacted Sheppard. According to Rogers, "[Sheppard's] response 
 to me was that Lindal has to have control over the territories, that don't worry, 
 I still have 293 and 296, but this allowed them to either increase that area 
 sometime in the future or decrease it." From June 1994 to approximately July 
 1996, Piedmont received leads from zip code areas beginning with 293 and 296. 

In 1996, Sheppard resigned from Lindal and negotiated with the company to begin 
 operating her own distributorship. As a result, in April she organized a business 
 known as Southern Originals, and subsequently entered into a dealer-distributorship 
 agreement with Lindal dated July 8, 1996. The agreement assigned Southern Originals 
 an area of primary responsibility within a ten-mile radius of its proposed business 
 location in Travelers Rest, South Carolina, in territory previously marketed 
 by Rogers though it was not part of his area of primary responsibility. In July 
 1996, Lindal began forwarding inquiries from prospective customers within zip 
 code areas beginning with 293 and 296 to either Piedmont or Southern Originals. 

In April 1999, Piedmont brought this action against Southern Originals alleging 
 an intentional interference with contract. Following a trial held May 30-31, 
 2000, a jury awarded Piedmont $115,000 in actual damages. This appeal followed. 

LAW/ANALYSIS

Standard of Review 

In deciding a motion for directed verdict or judgment notwithstanding the verdict, 
 the trial court "is required to view the evidence and the inferences that reasonably 
 can be drawn therefrom in the light most favorable to the party opposing the 
 motions." South Carolina Prop. & Cas. Guar. Ass'n v. Yensen, 345 S.C. 512, 
 521, 548 S.E.2d 880, 884-5 (Ct. App. 2001). On the other hand, the court must 
 deny the motion "when the evidence yields more than one inference or its inference 
 is in doubt." Id. at 521, 548 S.E.2d at 885. This Court will only reverse the 
 trial court's decision when there is no evidence to support its ruling. Creech 
 v. S.C. Wildlife & Marine Res. Dep't, 328 S.C. 24, 491 S.E.2d 571 (1997). 

Discussion

Southern Originals argues the trial court erred in denying its motions for 
 directed verdict and judgment notwithstanding the verdict, in part because there 
 was no breach in the contract between Piedmont and Lindal. We 
 agree. 

The tort of intentional interference with a contractual relationship requires 
 a plaintiff to prove the existence of a contract and the wrongdoer's knowledge 
 thereof, the intentional procurement of its breach without justification, 
 and resulting damages. See Kinard v. Crosby, 315 S.C. 237, 433 S.E.2d 835 (1993); 
 Camp v. Springs Mortgage Co., 310 S.C. 514, 426 S.E.2d 304 (1992). The agreement 
 between Rogers and Lindal was comprised of a form distributorship contract created 
 by Lindal which expressly stated: "The manufacturer may also increase the Distributor's 
 Area of Primary Responsibility, and may increase the quota for deliveries." 
 Next to this, Rogers had added the language concerning "area of zip codes leads 
 293** and 296**." Although Rogers and Sheppard initialed the change, it was 
 not accepted by Robert Lindal, who revised the language upon receipt to "zip 
 codes leads assigned may exceed AOPR and be changed from time to time." 

Piedmont's contract with Lindal provided: "The Dealer's area of primary responsibility 
 under this Agreement shall be a ten (10) mile radius of the Lindal home or store 
 or office described in Section 1." Section 1 indicates Rogers' demo home was 
 located at 115 White Plains Road in Pelzer, South Carolina. It is undisputed 
 Piedmont received all customer leads within a ten-mile radius of this location 
 and that Southern Originals' demo home was not located within Piedmont's area 
 of primary responsibility. Moreover, nothing in the contract indicates the zip 
 codes were in any way related to or part of Rogers' area of primary responsibility. 
 And, as Rogers admitted at trial, he understood Lindal's revision of the contract 
 permitted the company to increase or decrease his AOPR in the future. 

"In construing a contract, the primary concern of the court is to ascertain 
 and give effect to the intent of the parties." Worley v. Yarborough Ford, Inc., 
 317 S.C. 206, 209, 452 S.E.2d 622, 624 (Ct. App. 1994). In so doing, the court 
 first looks to the language of the contract itself. Id. Then, "[i]f the language 
 is clear and unambiguous, the language alone determines the contract's force 
 and effect." Sphere Drake Ins. Co. v. Litchfield, 313 S.C. 471, 473, 438 S.E.2d 
 275, 277 (Ct. App. 1993). When a contract is facially unambiguous, "it must 
 be construed according to the terms the parties have used, to be taken and understood 
 in their plain, ordinary, and popular sense." Id. 

The final contract between Rogers and Lindal unambiguously permitted Lindal 
 to decrease the area of Rogers' zip code leads. Although Southern Originals 
 began getting some leads Piedmont had previously been receiving, Lindal had 
 the right, by the express terms of the contract, to change the zip code areas 
 assigned. Hence, because Rogers received all he was entitled to under the contract--everything 
 within his area of primary responsibility--no breach occurred. As the existence 
 of a breach is prerequisite to recovery under the tort, the trial court erred 
 in sending the case to the jury. 

We note that, in an effort to prove contractual ambiguity at trial, Piedmont 
 introduced testimony concerning the terms of the contract and intent of the 
 parties despite the fact the contract was unambiguous. This was error. The parol 
 evidence rule prohibits admitting evidence that contradicts or adds to the terms 
 of an unambiguous contract. In re Estate of Holden, 343 S.C. 267, 275-76, 539 
 S.E.2d 703, 708 (2000) ("Where a written instrument is unambiguous, parol evidence 
 is inadmissible to ascertain the true intent and meaning of the parties."); 
 Crafton v. Brown, 346 S.C. 347, 351, 550 S.E.2d 904, 906 (Ct. App. 2001) ("The 
 parol evidence rule prevents the introduction of extrinsic evidence of agreements 
 or understandings contemporaneous with or prior to execution of a written instrument 
 when the extrinsic evidence is to be used to contradict, vary, or explain the 
 written instrument.") (footnote omitted). This is true even though Rogers offered 
 the testimony without objection. Holden, 343 S.C. at 276, 539 S.E.2d at 708 
 ("The parol evidence rule is a rule of substantive law, not a rule of evidence. 
 Accordingly, admission of evidence violating the parol evidence rule is legally 
 incompetent and should not be considered even if no objection is made at trial."); 
 Penton v. J.F. Cleckley & Co., 326 S.C. 275, 282 n.4, 486 S.E.2d 742, 746 
 n.4 (1997) (same). 

REVERSED.

CURETON, STILWELL, and SHULER, JJ., concur. 

1. The agreement defined "area of primary responsibility" 
 as "a ten (10) mile radius of the Lindal home or store or office."