613 S.E.2d 802

**Rebecca BREWER, Appellant,**

v.

**STOKES KIA, ISUZU, SUBARU, INC., Respondent.**

**No. 3985.**

Court of Appeals of South Carolina.

Heard March 9, 2005.
Decided May 2, 2005.
Rehearing Denied June 22, 2005.

446

Costa Steven Moskos, of Charleston, for Appellant.
Susan Corner Rosen, of Charleston, for Respondent.

HEARN, C.J.

This appeal arises after summary judgment was granted to Stokes Kia, Isuzu, Subaru, Inc., in a claim for breach of contract, conversion, and violation of certain consumer protection laws brought by a purchaser whose car had been repossessed in what was alleged to have been a yo-yo sale. We affirm.

## FACTS

In January 2000, Rebecca Brewer's automobile quit running, and she began shopping for another car. Brewer visited two car dealerships before visiting Stokes Kia. At both of the prior dealerships, Brewer was unable to purchase a car because of her poor credit rating. When Brewer arrived at Stokes Kia and explained her price range, she was shown a 1996 Ford Aspire, which she agreed to purchase. The salesman completed a handwritten buyer's order, which was signed by Brewer and initialed by the Stokes Kia sales manager. This buyer's order specified the car to be purchased, the price, and memorialized the acceptance of a one thousand dollar down payment from Brewer for the car.

Next, Brewer met with the Stokes Kia finance manager. The finance manager had her sign a new buyer's order that had been computer-generated and was stamped "VEHICLE DELIVERED SUBJECT TO CREDIT APPROVAL." Brewer initialed beside the stamped language. Brewer also signed a retail installment sales contract and security agreement. The retail installment sales contract lists the amount financed for the purchase of the car, $6,609.50; the name of the seller, Stokes Kia–Isuzu Subaru; the annual percentage rate, 21.95%; the number of payments, 36; amount of payments, $252.24; and when the monthly payments begin, February 10, 2000. This form was not signed by a representative of Stokes Kia. Additionally, Brewer signed a bailment agreement. The bailment agreement states: "If dealer is able to provide the Buyer(s) with financing according to the terms set forth in the Sales Agreement, the said Sales Agreement shall be binding upon Buyer(s) and enforceable by Dealer. In the event dealer is unable to provide financing Buyer(s) shall provide their own financing." It also says: "Pending credit approval of the Buyer(s) by the financing institution and

completion of the sales transaction, delivery of said vehicle by the Dealer is hereby made to Buyer(s) as a convenience to Buyer(s) . . . ." Brewer admitted nobody at Stokes Kia told her financing had been approved, but she also testified no one had indicated otherwise.

Several days later, Stokes Kia was having difficulty obtaining financing for Brewer and called to obtain further information about her employment status. When Brewer called back to resolve the question, she was told the dealer was unable to secure financing for her and, in order to keep the car, she would have to get a co-signor or find her own financing. Brewer contacted her bank, but her request for a loan was denied due to her poor credit rating. On January 19, 2000, Brewer received a call from Stokes Kia asking her to return the car, but she refused. Later that evening, a representative of Stokes Kia repossessed the vehicle. After this claim was initiated and depositions had been taken by Brewer, Stokes Kia returned her deposit with interest.

Brewer commenced this action against Stokes Kia, alleging causes of action for breach of contract; conversion; violations of the Unfair Trade Practices Act; and violation of the Manufacturers, Distributors, and Dealers Act. Approximately one year later, Stokes Kia moved for summary judgment. Nearly three weeks after the motion, Brewer sought to amend her complaint to add six additional causes of action. In June 2001, Judge Smoak denied the motion for summary judgment and granted the motion to amend the complaint. However, upon reconsideration, Judge Smoak granted summary judgment. A motion for reconsideration was timely filed, but was not heard until six months later. By that time, Judge Smoak had retired and the motion for reconsideration was heard by Judge Rawl. Judge Rawl denied the motion, and this appeal followed.

## STANDARD OF REVIEW

■ A trial court's decision to grant a motion for summary judgment is appropriate when there is no genuine issue of material fact so that the moving party is entitled to judgment as a matter of law. *Gilbert v. Miller*, 356 S.C. 25, 28, 586 S.E.2d 861, 863 (Ct.App.2003). All ambiguities, conclusions, and inferences arising from the evidence must be construed against the moving party. *Id.* An appellate court will review summary judgment in a liberal manner so as to construe the

record in favor of the nonmoving party and give the nonmoving party the benefit of all favorable inferences that might reasonably be drawn therefrom. *Jackson v. Doe*, 342 S.C. 552, 555, 537 S.E.2d 567, 568 (Ct.App.2000). Additionally, our court is cognizant that summary judgment is a drastic remedy, which must be cautiously invoked so that no person will be improperly deprived of a trial on disputed factual issues. *Id.*

### LAW/ANALYSIS

Brewer argues the trial court erred in granting summary judgment because: (1) issues of fact exist as to the existence of a contract; (2) she was not in default and therefore Stokes Kia did not have a right to repossess; and (3) she suffered damages. Brewer further argues that because summary judgment was granted in error, she should have been allowed to amend her complaint to add various other causes of action.

### 1. Contract issues

■ Brewer argues the trial court erred in granting summary judgment because there were issues of material fact regarding the existence of a contract. To support this argument, she first asserts the contract between Stokes Kia was not conditioned on her credit being approved. We disagree.

■ A condition precedent to a contract is "any fact other than the lapse of time, which, unless excused, must exist or occur before a duty of immediate performance arises." *Worley v. Yarborough Ford, Inc.*, 317 S.C. 206, 210, 452 S.E.2d 622, 624 (Ct.App.1994). "The question of whether a provision 'in a contract constitutes a condition precedent is a question of construction dependent on the intent of the parties to be gathered from the language they employ.' " *Id.* (citations omitted).

Here, the computer-generated buyer's order contained a stamped declaration that delivery was subject to credit approval, and Brewer admitted to seeing and initialing this declaration. Further, Brewer admitted no one at Stokes Kia told her that her credit had been approved.

In addition to the stamp on the signed, computer-generated buyer's order, a bailment agreement signed by Brewer states: "In the event dealer is unable to provide financing Buyer(s) shall provide their own financing." The computer-generated

buyer's order and the bailment agreement make it clear that the sale was not final until financing was arranged. The contract provided that Stokes Kia would attempt to obtain financing for Brewer, but if it could not, the responsibility would become Brewer's. If neither Stokes Kia nor Brewer were able to obtain financing, ownership of the vehicle would remain with Stokes Kia.

◼ In the event we find a condition precedent existed, Brewer further argues there was nothing to indicate the condition was not met, nor was there anything specifying who had to approve her request for credit. However, the bailment agreement explained the deal would be completed "[i]f dealer is able to provide Buyer(s) with financing according to the terms set forth in the Sales Agreement. . . ." This language vests discretion concerning financing with the dealership. Stokes Kia, like the two dealerships Brewer had previously visited, was unable to find a company to finance Brewer's purchase. Thus, it became Brewer's responsibility to find financing on her own. She, too, was unable to find financing.

◼ Brewer also argues the computer-generated buyer's order was preceded by a handwritten buyer's order which did not have a condition precedent and that the handwritten order itself constituted a contract. However, the actions of the parties and Brewer's ultimate signature on the computer-generated buyer's order demonstrate this handwritten buyer's order was simply a preliminary negotiation to the final agreement. This is underscored by the fact that no terms besides price were discussed in the handwritten buyer's order. In fact, it says that the "UNPAID BALANCE IS DUE ON DELIVERY" and lists the balance as $5,397.50. If this were the only enforceable contract between the parties, Brewer would be obligated to pay $5,397.50 to own the car. It is undisputed that Brewer was not able to meet that obligation.

◼ Brewer also argues the retail installment contract and security agreement constitute Stokes Kia's offer to finance the transaction. It appears from deposition testimony the retail installment contract was signed by Brewer when she met with the finance manager. It was at this time that she also signed the computer-generated buyer's order. Although Brewer signed the installment contract, it was never signed by Stokes Kia. In fact, Stokes Kia generally does not sign this document

until the credit has been approved. Because the document was not signed by Stokes Kia, it is not enforceable against it. *See* S.C.Code Ann. § 36-2-201 (2004).

■ Additionally, Brewer argues physical delivery of the car by Stokes Kia is either evidence the contract was complete or an indication that legal ownership of the car had transferred. She refers to section 36-2-401 of the South Carolina Code (2004) to support the latter proposition. Section 36-2-401 provides:

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place. . . .

The key phrase from section 36-2-401 is "unless otherwise explicitly agreed." The agreement between Brewer and Stokes Kia did explicitly state physical delivery of the car was only a convenience provided to the buyer and the sale was pending credit approval. Therefore, pursuant to the agreement, title did not pass at the time of physical delivery. This contract language also prevents introduction of this conduct as evidence the contract was complete.

Finally, in her reply brief, Brewer attempts to argue this case is controlled by *Singleton v. Stokes Motors, Inc.,* 358 S.C. 369, 595 S.E.2d 461 (2004). *Singleton* involved a yo-yo sale, defined as occurring when:

The consumer believes a vehicle's installment or sale is final and the dealer gives the consumer possession of the car 'on the spot.' The dealer later tells the consumer to return the car because the financing has fallen through. If the consumer does not return the vehicle or agree to rewrite the transaction on less favorable terms, the dealer repossesses the vehicle.

*Id.* at 380, 595 S.E.2d at 467 (quoting National Consumer Law Center, *Unfair and Deceptive Acts and Practices* 316 (5th ed.2001)). The transaction in *Singleton* involved an unconditional sales contract and conditional bailment agreement, which our supreme court called "patently unfair and deceptive acts." *Id.* at 381, 595 S.E.2d at 468. However, the court determined the dealerships could easily cure the unfairness by

explaining in the sales agreement that the sale is conditioned upon the buyer obtaining financing and telling the customers the truth about their credit. *Id.* at 381–82, 595 S.E.2d at 468. *Singleton* does not apply to Brewer's transaction because the buyer's order did contain a stamp making delivery of the car conditional upon Brewer obtaining financing and because Stokes Kia never told Brewer she had been financed.

Thus, we agree the trial court did not err in granting summary judgment on the basis of the lack of an enforceable contract.

## 2. Right to repossess, damages, and amendment of the complaint

■ Brewer argues the trial court was also in error when it found Stokes Kia had a right to repossess, when it found there were no damages, and when it denied her motion to amend the complaint. We disagree.

Brewer argues there was no right to repossession because she had not defaulted on the contract. *See* S.C.Code Ann. § 37–5–110 (2002). However, as discussed above, the car was delivered to Brewer subject to credit approval as a convenience extended to her by Stokes Kia. When Brewer was not financed and she was not able to obtain financing on her own, she was unable to complete the transaction. By failing to pay for the car, she defaulted on the contract. When default occurred, Stokes Kia had the right to repossess the car. *See* S.C.Code Ann. § 37–5–112 (2002).[1]

The trial court also supported its grant of summary judgment on the basis that Brewer could not demonstrate any damages. The trial court explained Brewer's down payment had been returned with interest and though Brewer alleged she could have had a free rental car for four additional days from the time of the sale, she actually used the car from Stokes Kia for eight days. Because we found the trial court was correct in granting summary judgment to Stokes Kia on the basis of the contract issues, it is not necessary that we rule on this issue. *See* Rule 220(c), SCACR; *Futch v. McAllister*

---

[1]. Providing: "Upon default by a consumer with respect to a consumer credit transaction, unless the consumer voluntarily surrenders possession of the collateral or rented property to the creditor, the creditor may take possession of the collateral or rented property without judicial

*Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining the appellate court need not address remaining issues when disposition of prior issue is dispositive).

Finally, Brewer's argument regarding amendment of her complaint is contingent on our finding the grant of summary judgment was in error. Because we have affirmed the grant of summary judgment this issue must also fail.

## CONCLUSION

For the reasons discussed above, the trial court's grant of summary judgment is

**AFFIRMED.**

KITTREDGE and WILLIAMS, JJ., concur.

_____

process only if possession can be taken without entry into a dwelling used as a current residence and without the use of force or other breach of the peace."