666 S.E.2d 262

**M & M GROUP, INC., Appellant,**

v.

**Suzette A.L. HOLMES, Gregory M. Kopatch d/b/a Empire Business Brokers, Empire Business Brokerage, LLC, and Gregory M. Kopatch Individually, Respondents.**

**No. 4427.**

Court of Appeals of South Carolina.

Submitted June 2, 2008.

Decided July 15, 2008.

470

William J. Cutchin, of Mt. Pleasant, for Appellant.

Brian G. Burke, of Charleston, for Respondents.

THOMAS, J.

In this breach of contract action, M & M Group, Inc. appeals the trial court's grant of summary judgment to Suzette Holmes, Gregory M. Kopatch[1] d/b/a Empire Business Brokers, Empire Business Brokerage, LLC, and Gregory M. Kopatch. We affirm.[2]

## FACTS

M & M Group, Inc. ("M & M") was the owner of a carwash and lube business located in Mt. Pleasant. Wishing to sell the business and its assets, M & M signed an exclusive Listing Agreement with Gregory Kopatch (Kopatch), a commercial sales broker doing business as Empire Business Brokerage, L.L.C. (Brokerage). Pursuant to the Listing Agree-

---

1. Initially we must note that summary judgment was granted solely to Holmes on M & M's breach of contract action. Although Holmes, Kopatch, and Empire Business Brokerage, L.L.C. are represented by the same attorney, the attorney made clear at the beginning of the hearing that Kopatch and the Brokerage were not parties to the Motion for Summary Judgment. As such, this appeal and opinion pertain only to the action against Holmes.

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

ment, the Brokerage would sell the business and M & M would then pay a commission to the Brokerage.

Kopatch identified Suzette Holmes ("Holmes") as a potential buyer, and on April 12, 2005, M & M and Holmes executed a sales contract ("Contract"). Under the terms of the Contract, M & M agreed to transfer its assets to Holmes in exchange for Holmes' payment of $675,000 to M & M. The first page of the Contract stated, "[w]hereas, the parties agree that Buyer's obligation to purchase the assets of the business and Seller's obligation to sell the assets is contingent upon Buyer's ability to secure commercial financing at prevailing interest rates." The Contract provided that Holmes was to secure $225,000 of the purchase price through commercial financing and M & M was to finance $250,000 with a sixty-month promissory note. The seven page Contract also set the closing date as May 22, 2005, and stated that time was of the essence.[3]

On May 9, 2005, Holmes' request for a loan was denied. No closing occurred on May. 22, 2005, and the sales transaction was never consummated thereafter. An affidavit by M & M's President, Sean Mummert, states the Brokerage called him on May 22 and told him a proposed lender needed additional information from Holmes before it would approve her financ-. ing request. Mummert affirms he told the Brokerage he would grant Holmes an extension in order for her to obtain financing needed to complete the transaction. No further communication occurred until October 12, 2005, when M & M received a letter informing them the proposed transaction was voided when Holmes was unable to obtain financing. A bank turndown letter regarding the May 9th denial of Holmes' loan request was also attached to the October 12th letter.

On November 14, 2005, M & M filed a complaint alleging breach of contract against Holmes as well as breach of fiducia-ry duty, breach of contract, and breach of contract accompa-nied by a fraudulent act against Kopatch and the Brokerage. Holmes subsequently filed a Motion for Summary Judgment which was heard by the trial court on March 16, 2007. Ruling

---

3. **"19. TIME IS OF THE ESSENCE.** It is agreed by both Buyer and Seller that time is of the essence in all regards in connection with this Agreement." (emphasis in original).

from the bench, the trial court granted Holmes' summary judgment motion. M & M now appeals.

## STANDARD OF REVIEW

■ In reviewing an order for summary judgment, the appellate court applies the same standard which governs the trial court under Rule 56 of the South Carolina Rules of Civil Procedure. *South Carolina Elec. & Gas Co. v. Town of Awendaw*, 359 S.C. 29, 34, 596 S.E.2d 482, 485 (2004). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant, the non-moving party below." *Willis v. Wu*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004).

■ "The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006).

## LAW/ANALYSIS

### I. Motion for Summary Judgment

■ M & M contends the trial court erred by granting Holmes summary judgment in light of the fact that Holmes' motion failed to state with particularity the grounds for summary judgment. We disagree.

Holmes' motion for summary judgment stated, "[t]he grounds for this motion shall be set forth in a Memorandum of

Law to be timely filed with supporting documents and affidavits as required." No such memorandum was filed with the trial court or provided to M & M. At the summary judgment hearing, M & M objected to the hearing itself since Holmes failed to follow Rule 7(b)(1)[4] of the South Carolina Rules of Civil Procedure. However, M & M did not ask the trial court for any sort of relief or request the motion be dismissed or continued in order to better prepare for the motion. M & M simply objected to the hearing.[5] The trial court evidently assumed M & M was making such a motion for a continuance and denied it. M & M now appeals claiming it was "unable to properly prepare for arguing the Motion for Summary Judgment."

M & M correctly asserts Holmes did not comply with the technical requirements of Rule 7(b)(1), SCRCP. However, M & M did not argue at the trial court that Holmes' failure to follow Rule 7(b)(1), SCRCP, prejudiced it or caused unfair surprise in any way. As such, we find M & M's current argument of prejudice is not preserved for our review. *Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review.").

■ Were we to consider the merits of this argument, this Court would be forced to find M & M cannot make the requisite showing of prejudice necessary to reverse the trial court's denial of a continuance. The grant or denial of a

---

**4.** Rule 7(b)(1), SCRCP, provides, "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial in open court with a court reporter present, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion."

**5.** At the hearing M & M's counsel argued, "First I would like to object to this Motion hearing itself in that counsel failed to follow Rule 7(b)(1) of the South Carolina Rules of Civil Procedure ... In the Motion itself there are no grounds whatsoever given for this Motion. So I would like to object to it on that stance to start with." The trial court stated, "Okay. Well, that Motion is denied." M & M's counsel replied, "Thank you....Secondly, your Honor, there are two reasons why counsel should fail on its Motion."

continuance lies with the sound discretion of the trial court and such ruling will not be reversed absent a clear showing of abuse of discretion. *State v. Tanner*, 299 S.C. 459, 462, 385 S.E.2d 832, 834 (1989). "Moreover, the denial of a motion for a continuance on the ground that counsel has not had time to prepare is rarely disturbed on appeal." *Plyler v. Burns*, 373 S.C. 637, 650, 647 S.E.2d 188, 195 (2007). M & M has demonstrated no such prejudice at either the trial court or this court.

## II. Condition Precedent Located in a Recital

M & M contends the contingency in Paragraph 4 of the Contract is a recital and cannot be construed as a condition precedent. M & M further argues summary judgment was inappropriate because the placement of a contingency in a recital clause creates a question of fact as to whether a condition precedent existed at all. We disagree.

Paragraph 4 of the Contract states, in full, "[w]hereas, the parties agree that Buyer's obligation to purchase the assets of the business and Seller's obligation to sell the assets is contingent upon Buyer's ability to secure commercial financing at prevailing interest rates." The Contract also contains a section entitled "Contingencies." Language similar to Paragraph 4 does not appear in the "Contingencies" section; however, the Contract itself states the headings do not define, limit, or describe the scope or intent of the Contract's provisions.[6]

Black's Law Dictionary defines "recital" as "[a]n account or description of some fact or thing; . . . [a] preliminary statement in a contract or deed explaining the background of the transaction or showing the existence of particular facts." (7th ed.2000). Recitals also traditionally begin with the word "whereas." Black's Law Dictionary (8th ed.2004). Although whereas clauses typically describe the background leading to a contract, the foremost rule of contract interpretation is that courts "must give effect to the intentions of the parties by looking to the language of the contract." *Moser v. Gosnell,*

---

6. **HEADINGS AND CONSTRUCTION.** The caption headings are used in this Agreement only as a matter of convenience and for reference and do not define, limit, or describe either the scope of this Agreement or the intent of any provision." (emphasis in original).

334 S.C. 425, 430, 513 S.E.2d 123, 125 (Ct.App.1999) (citing *Conner v. Alvarez*, 285 S.C. 97, 101, 328 S.E.2d 334, 336 (1985)); *see Superior Auto. Ins. Co. v. Maners*, 261 S.C. 257, 199 S.E.2d 719 (1973) (holding the intention of an instrument is determined by its language, regardless of whether such language is in a whereas clause; language in a recital clearly set forth an agreement's purpose as a modification); *Horry v. Frost*, 10 Rich. Eq. 109, 1858 WL 3728 (Ct.App.Eq.1858) ("A covenant may be as obligatory when expressed by way of recital as if expressed in the formal part of the agreement.").

■■ "To discover the intention of a contract, the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Ecclesiastes Production Ministries v. Outparcel Assocs., L.L.C.*, 374 S.C. 483, 498, 649 S.E.2d 494, 501 (Ct.App.2007) (citing *Superior Auto. Ins.*, 261 S.C. at 263, 199 S.E.2d at 722); *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct.App.2004) ("If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect."). If practical, documents will be interpreted to give effect to all of their provisions. *Ecclesiastes*, 374 S.C. at 498, 649 S.E.2d at 502 (citations omitted); *Brady v. Brady*, 222 S.C. 242, 246–47, 72 S.E.2d 193, 195 (1952).

■■ The primary test of a contract's character is "the intention of the parties, such intention to be gathered from the whole scope and effect of the language used." *Barnacle Broadcasting, Inc. v. Baker Broadcasting, Inc.*, 343 S.C. 140, 147, 538 S.E.2d 672, 675 (Ct.App.2000). "The question of whether a provision in a contract constitutes a condition precedent is a question of construction dependent on the intent of the parties to be gathered from the language they employ." *Brewer v. Stokes Kia, Isuzu, Subaru, Inc.*, 364 S.C. 444, 449, 613 S.E.2d 802, 805 (Ct.App.2005) (citations omitted). "In ascertaining intent, the court will strive to discover the situation of the parties, along with their purposes at the time the contract was entered." *Ellie*, 358 S.C. at 94, 594 S.E.2d at 493. Parties are governed by their outward expressions and

the court is not free to consider their secret intentions. *Id.* at 94, 594 S.E.2d at 494.

In the present case, Paragraph 4 clearly states, "the parties agree that Buyer's obligation to purchase the assets of the business and Seller's obligation to sell the assets *is contingent upon* Buyer's ability to secure commercial financing." (emphasis added). The use of the language "is contingent upon" is unequivocal and patently indicates the parties' respective obligations to buy and sell the business are contingent on Holmes' ability to secure financing. No other meaning could be deduced from such clear and commonly used language. "When a contract is clear and unambiguous, the construction of the contract is a question of law for the court." *Moser,* 334 S.C. at 430, 513 S.E.2d at 125 (citing *Conner,* 285 S.C. at 101, 328 S.E.2d at 336). Accordingly, we agree with the trial court that Paragraph 4 of the Contract contains a condition precedent. We will now discuss whether such condition was met.

### III. Condition Precedent

M & M contends the trial court erred in awarding summary judgment on the basis of Holmes' inability to meet a condition precedent resulting in a void contract. We disagree.

A condition precedent to a contract is "any fact other than the lapse of time, which, unless excused, must exist or occur before a duty of immediate performance arises." *Brewer v. Stokes Kia, Isuzu, Subaru, Inc.,* 364 S.C. 444, 449, 613 S.E.2d 802, 805 (Ct.App.2005) (citing *Worley v. Yarborough Ford, Inc.,* 317 S.C. 206, 210, 452 S.E.2d 622, 624 (Ct.App. 1994)). Here, the Contract contained a condition precedent [7] that Holmes' obligation to purchase the business was subject to her ability to secure commercial financing.

On May 9, 2005, Holmes' request for a loan was denied. At the summary judgment hearing, no evidence was

---

7. Black's Law Dictionary defines "condition precedent" as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. If the condition does not occur and is not excused, the promised performance need not be rendered." (8th ed.2004).

478

presented regarding Holmes' ability to secure commercial financing, and no evidence was presented to show Holmes obtained financing by the Contract's closing date of May 22, 2005. "The failure of one to perform under a contract because of his inability to obtain financing from a third party on whom he relied to furnish the money will not excuse performance, in the absence of a contract provision in that regard." *Worley,* 317 S.C. at 209, 452 S.E.2d at 624 (citing 17A Am.Jur.2d *Contracts* § 680 (1991)). This Contract contained just such a provision relating to Holmes' ability to obtain financing.

In light of this Contract's language and the foregoing reasons, the order of the trial court granting summary judgment in favor of Holmes on M & M's causes of action is

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.