**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 10-1656**

───────────

GEO PLASTICS; MICHAEL MORRIS,

        Plaintiffs - Appellants,

    v.

BEACON DEVELOPMENT COMPANY; SOUTHCROSS LLC,

        Defendants - Appellees.

───────────

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill.  Joseph F. Anderson, Jr., District
Judge.  (0:09-cv-01181-JFA)

───────────

Argued:  March 22, 2011          Decided:  June 8, 2011

───────────

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

───────────

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion,
in which Judge Wilkinson and Judge Keenan joined.

───────────

**ARGUED:**  Joshua D. Davey, MCGUIRE WOODS, LLP, Charlotte, North
Carolina, for Appellants.  Scott M. Tyler, MOORE & VAN ALLEN,
Charlotte, North Carolina, for Appellees.  **ON BRIEF:**  Irving M.
Brenner, MCGUIRE WOODS, LLP, Charlotte, North Carolina, for
Appellants.  Wm. Howell Morrison, MOORE & VAN ALLEN, Charleston,
South Carolina, for Appellees.

───────────

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Geo Plastics and its sole shareholder Michael Morris (collectively "Geo") appeal a decision of the district court granting summary judgment to Beacon Development Company and SouthCross LLC (collectively "Beacon"). In the diversity action giving rise to this appeal, Geo asserted several claims against Beacon stemming from a failed attempt by Geo to purchase commercial real estate from Beacon. The district court granted summary judgment to Beacon on all of Geo's claims. We affirm.

I.

A.

Appellant Geo Plastics is a California company that manufactures plastic components for industrial and consumer uses. Appellee Beacon Development Company is a property management company headquartered in Charlotte, North Carolina that leases and sells commercial properties. Appellee SouthCross LLC is an affiliate of Beacon Development Company established to manage and develop certain property located at the SouthCross Corporate Center in Rock Hill, South Carolina ("Property"). Beacon purchased the Property in 2006.

At all relevant times, the Property was subject to a Reciprocal Easement Agreement ("Easement") restricting the acceptable uses of the Property. Specifically, the "Use

2

Restriction" provided that "[n]o portion of the Entire Tract may be leased, used or occupied as [sic] . . . industrial manufacturing." J.A. 711. The Easement did not define industrial manufacturing. Michael Harrell, the Beacon Vice President responsible for the SouthCross development, received and reviewed a copy of the Easement as part of Beacon's due diligence for the purchase of the Property.

In November 2007, Geo hired a real estate broker, Doug Wynne, to locate a suitable property to satisfy Geo's need for a manufacturing location near Charlotte. Beacon sales agent Scott Dumler responded to an email solicitation by Wynne and recommended the Property. Following the initial contact, Beacon and Geo continued discussions about the Property from late 2007 through 2008. During this period, Morris and Wynne visited the Property and met with Dumler.

Morris discussed Geo's intended use for the Property with Dumler and Wynne and sought assurances that it would be suitable for the manufacturing of plastic components. Wynne recalled Dumler saying that Geo's intended use "wouldn't be a problem." Id. 1437. In December 2007, Dumler submitted a sales proposal offering to sell the Property to Geo and touting the availability of tax credits for manufacturing companies. As the parties came closer to reaching an agreement in early 2008, Geo had several discussions with Beacon regarding whether Geo's

3

intended use complied with local zoning laws and ordinances. In one exchange, Dumler indicated that "[t]here should not be any issues with [Geo] installing silos" and offered to "work with [Geo] during the due diligence period to confirm [the zoning issues]." Id. 799. In a subsequent discussion about zoning, however, Dumler suggested that Geo "get written approval for everything." Id. 861.

No one from Beacon ever informed Geo of the Easement and its restriction on industrial manufacturing. Harrell, who had previously reviewed the Easement during Beacon's purchase of the Property, testified via deposition that the Easement "[n]ever came to mind" during his discussions with Geo and that "at the time" he "had forgotten it." Id. 1879–80. Dumler, on the other hand, testified that he was unaware of the Easement when he marketed the Property to Geo.

On June 30, 2008, Geo and Beacon entered into a written agreement for the purchase and sale of the Property ("Agreement"). The agreed upon purchase price was $2,504,128. Following execution of the Agreement, Geo shipped manufacturing equipment from Germany to South Carolina for use at the Property.[1]

---

[1] The Agreement required Beacon to construct an opening in the building and a ramp within thirty days of the contract date. (Continued)

The Agreement required Geo to make a $50,000 earnest money deposit and provided Geo a sixty-day examination period for due diligence.  Important to this appeal, the Agreement also stated that Geo "shall" perform a title examination during the examination period.  Id. 36.  If Beacon did not cure any title defects within thirty days, Geo had the right to terminate the Agreement and receive a return of its earnest money.  The parties also agreed that if Beacon defaulted and the parties failed to consummate the sale of the Property, then Geo's "sole and exclusive remedy" was either to terminate the Agreement and recoup its earnest money or to seek specific performance.  Id. 44.

B.

Geo retained an attorney, Paul Dillingham, to conduct the title examination required by the Agreement.  Dillingham previously represented the title insurance company, Chicago Title Company, during Beacon's purchase of the Property in 2006.  In that role, Dillingham listed the exceptions to title and ensured that the exceptions properly reflected the public record.  The limited scope of that prior representation,

According to Morris, the purpose of this improvement was to accommodate delivery of the manufacturing equipment.

5

however, did not require Dillingham to examine the underlying documents. Thus, although Dillingham had a copy of the Easement in his files, he did not recall the specifics of the use restriction in the Easement when Geo engaged him to conduct the title examination.

On August 19, 2008, Geo first learned of the Easement from a representative of Bank of America, the bank from which Geo sought financing for its purchase of the Property. At the time, Dillingham had not begun his title examination on behalf of Geo and was unaware of the use restriction. Geo raised the issue of the Easement with Dumler, who responded via email, "We reviewed this provision during our initial due diligence period and was [sic] confident enough with it to move forward with investing nearly 10 million dollars to acquire and develop the project." J.A. 875.[2]

Following discovery of the Easement, Geo and Beacon agreed to extend the examination period for fifteen days to attempt to resolve the issue of the use restriction. Beacon also offered to indemnify Geo up to $250,000 to cover the risk of the industrial manufacturing restriction in the Easement. Despite

---

[2] Dumler testified that he was previously unaware of the Easement and had not participated in the due diligence for Beacon's purchase of the Property. According to Dumler, he used "we" in his email to Geo to refer to Beacon as an organization. Id. 632.

6

Beacon's indemnity offer, Geo's title insurer would not insure over the Easement. On October 13, 2008, Geo provided written notice to Beacon terminating the Agreement. In response, Beacon directed the escrow agent to release Geo's earnest money. Immediately after the termination, Geo shipped its manufacturing equipment from South Carolina to its California facility in order to place the equipment into service prior to expiration of the manufacturer's warranty.

C.

Geo sued Beacon in the U.S. District Court for the Central District of California, which dismissed Geo's complaint without prejudice for lack of personal jurisdiction. Geo then filed this action in the U.S. District Court for the District of South Carolina. In the complaint, Geo asserted four claims against Beacon: (1) fraud, (2) negligent misrepresentation, (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"), and (4) breach of contract. Geo alleged that it incurred hundreds of thousands of dollars in costs to prepare to purchase the Property, including the shipment and storage of equipment.

Beacon filed a motion for summary judgment, which the district court granted in full. The district court resolved Geo's fraud and misrepresentation claims together, holding that

7

it was not reasonable for Geo to rely on any misrepresentations made by Beacon. With respect to the UDTPA claim, the district court ruled that Geo failed to set forth evidence creating a genuine issue of material fact. Finally, the district court concluded that Beacon was entitled to judgment as a matter of law on the breach of contract claim because Geo received its sole and exclusive remedy under the Agreement when it received its earnest money. Geo timely appealed.

## II.

Geo contends that the district court erroneously granted summary judgment to Beacon on each of its claims. We review a district court's decision to grant summary judgment de novo, "applying the same standard as the district court." Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 290 (4th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In a case premised on diversity jurisdiction, we apply the law that the forum state would have applied if it had heard the case. Homeland, 594 F.3d at 290-91. The parties do not dispute that North Carolina law governs Geo's fraud, negligent

8

misrepresentation, and UDTPA claims, while South Carolina law governs the breach of contract claim.

A.

We first consider whether it was reasonable for Geo to rely on any misrepresentations made by Beacon. The district court's conclusion on reasonable reliance formed the foundation for its decision to award summary judgment to Beacon on Geo's fraud and negligent misrepresentation claims. As such, we consider these claims together.

Under North Carolina law, fraud requires proof of "(1) [a] [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injur[ed] party." Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974). A claim of negligent misrepresentation requires the plaintiff to demonstrate (1) that he justifiably relied (2) to his detriment (3) on information prepared without reasonable care (4) by a defendant who owed a duty of care. Hospira Inc. v. AlphaGary Corp., 671 S.E.2d 7, 12 (N.C. Ct. App. 2009).

Claims of fraud and negligent misrepresentation both require that the plaintiff's reliance on any misrepresentations be reasonable. MacFadden v. Louf, 643 S.E.2d 432, 435 (N.C. Ct.

9

App. 2007). A purchaser of property asserting a claim for losses incurred based on reliance on a false representation "may not be heard to complain if the parties were on equal terms and [the purchaser] had knowledge of the facts or means of information readily available and failed to make use of his knowledge or information, unless prevented by the seller." Fox v. S. Appliances, Inc., 141 S.E.2d 522, 526 (N.C. 1965).

North Carolina courts have explained the reasonableness requirement as follows:

> [R]eliance is not reasonable if a plaintiff fails to make any independent investigation unless the plaintiff can demonstrate: (1) it was denied the opportunity to investigate the property, (2) it could not discover the truth about the property's condition by exercise of reasonable diligence, or (3) it was induced to forego additional investigation by the defendant's misrepresentations.

MacFadden, 643 S.E.2d at 434 (internal quotations omitted). Although reasonable reliance is typically a question for the jury, summary judgment is appropriate in a situation in which " 'the facts are so clear that they support only one conclusion.' " Id. (quoting State Props., LLC v. Ray, 574 S.E.2d 180, 186 (N.C. Ct. App. 2002)).

The evidence in this case, even when viewed in the light most favorable to Geo, shows that Geo had the means available to identify the restriction contained in the Easement. First, Dillingham, Geo's attorney, had a copy of the Easement in his

files from his prior representation of Chicago Title Company. Second, even though Dillingham had no independent recollection of the terms of the Easement, he acknowledged that he would have discovered the restriction as part of the title examination required by the Agreement.

Geo contends that it acted reasonably in investigating the suitability of the Property for its intended use by hiring an experienced real estate broker to assist in its search, asking Beacon about the acceptable uses of the Property, and hiring an attorney to conduct a title examination. The conduct that Geo cites as its independent investigation, however, amounts to little more than the preparation for an investigation. We conclude that such steps did not give Geo reasonable grounds to expend the shipping and other pre-closing costs that it now seeks to recover as tort damages in this case.

The bottom line is that Geo and Beacon were commercial parties, each represented by legal counsel, engaged in a $2.5 million real estate transaction. In these circumstances, we hold that an independent investigation by the buyer as to the suitability of the property for its intended commercial use--at least as a prelude to asserting claims for fraud and negligent misrepresentation--requires more than discussions with the seller and the retention of a real estate broker and a lawyer. See RD & J Props. v. Lauralea-Dilton Enters., 600 S.E.2d 492,

11

499 (N.C. Ct. App. 2004) (affirming summary judgment where plaintiff failed to forecast evidence that its reliance was reasonable and emphasizing that the parties were sophisticated businesspersons dealing at arm's length).  Rather, when the purchaser of property in an arm's length transaction, like the one between Geo and Beacon, "has the opportunity to exercise reasonable diligence and fails to do so, the element of reasonable reliance is lacking and the purchaser has no action for fraud" or negligent misrepresentation.  See id. at 499 (citing Calloway v. Wyatt, 97 S.E.2d 881, 885–86 (N.C. 1957)); see also MacFadden, 643 S.E.2d at 434–35 (affirming summary judgment on negligent misrepresentation claim).

Having failed to conduct an independent investigation, Geo could not reasonably rely on any misrepresentations made by Beacon to incur substantial pre-closing costs, unless Beacon either denied Geo the opportunity to investigate or induced Geo to forgo investigation.  See id. at 434.  There is no evidence to support either contention.  To the contrary, the undisputed evidence is that the Agreement required Geo to conduct a title examination and that Geo would have discovered the restriction on industrial manufacturing as part of that investigation.  Accordingly, Geo's reliance on any misrepresentations by Beacon prior to incurring the alleged damages was not reasonable as a matter of law.

12

We quickly address Geo's contention that the district court improperly resolved several factual disputes in favor of Beacon. On appeal, Geo points to three such conclusions by the district court: (1) Geo made no independent investigation of the suitability of the Property for its use and relied only on Dumler's statement that its use would be acceptable; (2) Dillingham had previously searched the title on behalf of SouthCross and had the ability and opportunity to discover the restrictive easement; and (3) only Harrell at Beacon knew of the Easement, he forgot about it, and there is no evidence that Beacon negligently or intentionally failed to disclose the Easement's existence to Geo.

The district court was at least partially correct in its analysis of the facts. Viewed in the light most favorable to Geo, the evidence shows that Geo in fact failed to conduct an independent investigation and that it had the ability and opportunity to discover the Easement. Because the undisputed facts are fatal to Geo's claims of fraud and negligent misrepresentation, we need not decide whether the district court erred in resolving the other alleged factual disputes identified by Geo.

To summarize, the undisputed facts are that Geo and Beacon were commercial parties engaged in a $2.5 million real estate transaction, the Agreement required Geo to conduct a title

13

examination, such an examination would have revealed the restriction on industrial manufacturing, and Beacon did nothing to prevent or discourage Geo's investigation. These undisputed facts in turn demonstrate that Geo's reliance on any misrepresentations was not reasonable as a matter of law. Accordingly, we agree with the district court that Geo failed to raise a genuine issue of material fact in support of its fraud and negligent misrepresentation claims.

B.

We next consider whether Geo set forth evidence raising a genuine issue of material fact in support of its UDTPA claim. The elements of a UDTPA claim are (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000).

A UDTPA claim does not require proof of fraud, bad faith, or actual deception. RD & J, 600 S.E.2d at 500–01. Instead, a plaintiff need only show that the defendant's acts "possessed the tendency or capacity to mislead or created the likelihood of deception." Id. at 501. While it is a question of fact whether a defendant performed the acts alleged by the plaintiff, it is a

14

question of law whether those acts constitute a UDTPA violation. Gray, 529 S.E.2d at 681.

North Carolina courts have routinely granted summary judgment on UDTPA claims where, as here, the plaintiff could not reasonably rely on the defendant's misrepresentations. E.g., Sunset Beach Dev., LLC v. AMEC, Inc., 675 S.E.2d 46, 53–54 (N.C. Ct. App. 2009) (affirming summary judgment on the issue of reasonable reliance); RD & J, 600 S.E.2d at 501 ("[S]ummary judgment was proper on [UDTPA] claim for the same reasons that the court had previously found any reliance on representations to be unreasonable.") (construing Spartan Leasing Inc. of N.C. v. Pollard, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991)). As discussed in the preceding section, Geo could not reasonably rely on any misrepresentations made by Beacon. Accordingly, even when viewing the evidence in the light most favorable to Geo, Beacon's acts do not constitute a violation of the UDTPA. We therefore agree with the district court that Geo failed to raise a genuine issue of material fact in support of its UDTPA claim.

## C.

Finally, we address whether the district court erred in its conclusion that Beacon was entitled to judgment as a matter of law on the breach of contract claim. Summary judgment is

appropriate in breach of contract cases if the parties' intentions are clear based on the plain and unambiguous language of the contract. M & M Grp., Inc. v. Holmes, 666 S.E.2d 262, 266 (S.C. Ct. App. 2008); see also Laser Supply and Servs., Inc. v. Orchard Park Assocs., 676 S.E.2d 139, 143 (S.C. 2009) ("When the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court.").

Geo contends that Beacon breached section 15 of the Agreement, which states as follows:

> To Seller's actual knowledge . . . (ii) performance of the Agreement will not result in the breach of . . . any agreement or other instrument . . . by which . . . the Property is bound; and (iii) there are no legal actions, suits or other legal or administrative proceedings pending or threatened against the Property, and Seller is not aware of any facts which might result in any such action, suit or other proceeding.

J.A. 39. Geo argues that Beacon's representations in this section were false because Beacon had knowledge of the Easement and knew that performance of the Agreement would breach the Easement. Beacon responds that Geo offered no evidence that Beacon had actual knowledge of the Easement during the relevant time period and that performance of the Agreement would not violate the Easement.

We need not resolve the issue of whether Beacon breached section 15, however, because--as the district court correctly

16

concluded--Geo received its sole and exclusive remedy for any such breach after terminating the Agreement. Paragraph 12 of the Addendum to the Agreement provides as follows:

> [I]f the sale and purchase of the Property contemplated by this Agreement is not consummated because Seller defaults hereunder, then Buyer may, as its sole and exclusive remedy, either (i) terminate this Agreement and upon such termination, the Seller shall take such action as to cause the Escrow Agent to release the Earnest Money to Buyer or (ii) seek specific performance of this Agreement.

Id. 44.

The terms of the Agreement providing Geo's remedies following any breach by Beacon are clear and unambiguous.[3] As its sole and exclusive remedy, Geo may either terminate the Agreement and recoup its earnest money or seek specific performance. The undisputed facts show that Geo terminated the Agreement because Beacon failed to cure title defects and that Beacon directed the escrow agent to return Geo's earnest money following the termination. Even assuming that Beacon's alleged misrepresentations regarding knowledge of the Easement breached the Agreement, the undisputed facts show that Geo received its

---

[3] Geo contends that paragraph 12 does not apply here because it is implicated only in the event of a "default." Geo argues that Beacon's conduct breached the Agreement but did not result in a default. Geo's attempt to draw a distinction between a default and a breach is unsupported by the Agreement, as well as the plain meaning of the two terms. We find no ambiguity and hold that paragraph 12 provides Geo's exclusive contractual remedy.

17

contractual remedy when it recouped its earnest money. Accordingly, we agree with the district court that Beacon is entitled to summary judgment on the breach of contract claim.

## III.

For these reasons, we affirm the district court's order granting summary judgment in favor of Beacon.

<u>AFFIRMED</u>