759 S.E.2d 724

James J. KERR, Crayton Walters, and
J.T. Main, LLC, Appellants,

v.

BRANCH BANKING AND TRUST COMPANY, successor in merger to Branch Banking and Trust Company of South Carolina, a/k/a BB & T, and James Edahl, Respondents,

Ron Konersmann, Appellant,

v.

Branch Banking and Trust Company, successor in merger to Branch Banking and Trust Company of South Carolina, a/k/a BB & T, and James Edahl, Respondents,

John Voytko, Appellant,

v.

Branch Banking and Trust Company, successor in merger to Branch Banking and Trust Company of South Carolina, a/k/a BB & T, and James Edahl, Respondents,

Patricia Konersmann, Appellant,

v.

Branch Banking and Trust Company, successor in merger to Branch Banking and Trust Company of South Carolina, a/k/a BB & T, and James Edahl, Respondents.

Consolidated Appellate Case No. 2012–205647.

No. 27379.

Supreme Court of South Carolina.

Heard Nov. 6, 2013.

Decided April 9, 2014.

M. Dawes Cooke, Jr., and John William Fletcher, both of Barnwell, Whaley, Patterson, & Helms, LLC, of Charleston; John P. Linton, Sr., and Brian C. Duffy, both of Duffy & Young, LLC, of Charleston; Andrew K. Epting, Jr., and Michelle Nicole Endemann, both of Andrew K. Epting, Jr., LLC, of Charleston, for Appellants.

Julio E. Mendoza, Jr., and Tanya Amber Gee, both of Nexsen Pruet, LLC, of Columbia; and Molly Hughes Cherry, of Nexsen Pruet, LLC, of Charleston, for Respondents.

Chief Justice TOAL.

In this consolidated appeal, the plaintiffs from four separate actions (collectively, Appellants) ask this Court to reverse the trial court's order granting a motion to dismiss in favor of Branch Banking & Trust Company (BB & T) and BB & T employee James Edahl (collectively, Respondents). We affirm.

The facts, in the light most favorable to Appellants, are as follows.[1] Skywaves I Corporation (Skywaves) is a South

---

1. We note that the trial court and both parties continuously referred to the motions at issue as "motions to dismiss." However, Appellants

Carolina corporation that develops technology for the wireless telecommunications industry. In 2005, Skywaves entered into a factoring agreement with BB & T. From 2005 to 2007, Skywaves and BB & T occasionally amended the factoring agreement via written modifications so that BB & T could fund Skywaves's working capital needs as those needs developed and expanded.

In early 2007, Skywaves won several lucrative government contracts, and its Board of Directors determined that the company required more capital than BB & T provided at that time in order to meet the increased demand for their products. Skywaves therefore solicited funding proposals from various entities, including Wachovia, Hunt Capital, and BB & T.

In March 2007, Edahl, an employee at BB & T's branch located in Charleston, held a meeting for Skywaves and its current investors, informing them:

> that [BB & T] understood the short and long term capital needs of Skywaves; that Skywaves did not need a large bank or additional capital funding to continue its growth; that [Respondents] believed Skywaves was strategically positioned for success; that [Respondents] wanted to take Skywaves to a sale or stock IPO; and that BB & T would fund all the company's financial needs.

Following this presentation, Skywaves decided to obtain the needed funding from BB & T. Skywaves therefore entered into a new and expanded factoring agreement, which provided

---

provided materials outside the pleadings to the trial court—specifically, the new factoring agreement and correspondence between BB & T and Skywaves—and the court relied on those materials in making its decision to dismiss Appellants' claims, thereby converting Respondents' motions to dismiss into motions for summary judgment. *See* Rule 12(b), SCRCP.

When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), SCRCP, including viewing the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Turner v. Milliman*, 392 S.C. 116, 121–22, 708 S.E.2d 766, 769 (2011); *Fleming v. Rose*, 350 S.C. 488, 493–94, 567 S.E.2d 857, 860 (2002). "Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002).

for, among other things, financing based on accounts receivable, invoices, purchase orders, contracts, and site plans. The parties intended the new factoring agreement to obligate BB & T to advance the costs of Skywaves's expanded manufacturing.

Several months later, in July 2007, Edahl made a presentation to Appellants, each of whom was a director, officer, or shareholder in Skywaves, in addition to a current or potential investor in Skywaves. During the presentation, Edahl told Appellants that BB & T believed that Skywaves would continue to develop and expand into new markets, that BB & T "was fully committed to providing all of Skywaves['s] short-term and long-term financial needs for growth," and that BB & T would honor the new factoring agreement between itself and Skywaves. Appellants alleged that they each relied on these statements and were induced to "invest[ ] in the growth" of Skywaves via purchasing equity positions and making loans to Skywaves.

BB & T funded Skywaves in accordance with the new factoring agreement from March 2007 until January 2008. In January 2008, BB & T asserted that Skywaves had defaulted under the terms of the factoring agreement, and BB & T refused to honor any further financial commitments in accordance with the contract. In the absence of funding, Skywaves filed for bankruptcy.

As a result of the bankruptcy proceedings, Appellants lost their equity investments in Skywaves. Skywaves and Appellants therefore filed separate lawsuits against Respondents—Skywaves on its own behalf, and Appellants in their capacity as investors and employees of Skywaves.[2] Appellants asserted claims for negligent misrepresentation, fraudulent inducement, negligence, and violations of the South Carolina Unfair Trade Practices Act (the SCUTPA).[3] Arguing that their

2. The action initiated by Skywaves to allocate fault for BB & T's alleged breach of the new factoring agreement is not a part of this appeal.

3. Appellants did not appeal the trial court's dismissal of the SCUTPA claims. Therefore, the trial court's findings regarding the SCUTPA claims are the law of the case, and we will not further address those claims. *See In re Morrison,* 321 S.C. 370, 372 n. 2, 468 S.E.2d 651, 652

claims were entirely separate from the claims Skywaves asserted against BB & T, Appellants asserted that the alleged misrepresentations made by Edahl during the July 2007 presentation were torts committed against them directly and that they did not file their actions to enforce the new factoring agreement between Skywaves and BB & T. Appellants requested Respondents pay actual damages in the amount of Appellants' lost investments.[4]

Respondents filed motions to dismiss in each action. Appellants opposed the motions to dismiss and attached copies of the factoring agreement and correspondence between BB & T and Skywaves in support of their motions.

The trial court granted the motions to dismiss, finding all of Appellants' claims were barred for various reasons.[5] Appellants appealed all four cases and moved to consolidate the matters, claiming that they had stated cognizable claims for negligence, negligent misrepresentation, and fraudulent inducement based on the statements made by Edahl at the July 2007 presentation. This Court certified the appeal from the court of appeals pursuant to Rule 204(b), SCACR.

 Despite Appellants' attempt to frame their claims as alleged misrepresentations made to them in their capacity as

---

n. 2 (1996) (explaining that an unappealed ruling becomes the law of the case, precluding consideration of the issue on appeal).

4. Additionally, Appellants Voytko (Skywaves's CFO) and Konersmann (Skywaves's CEO) claimed Respondents were responsible for $37,048.13 and $870,000.00, respectively, in lost salary and unreimbursed expenses.

5. In dismissing Appellants' claims, the trial court relied in part on section 37–10–107 (the lender statute of frauds). However, section 37–10–107 only applies to suits between lenders and borrowers, such as that between Skywaves and BB & T, and it therefore is irrelevant here. *See* S.C.Code Ann. § 37–10–107 (2002 & Supp.2010); John L. Culhane, Jr., & Dean C. Gramlich, *Lender Liability Limitation Amendments to State Statutes of Frauds*, 45 Bus. Law. 1779, 1780, 1792 (1990) (discussing the purpose of the Model Lender Liability Statute, of which South Carolina's lender statute of frauds is a word-for-word reproduction); *cf. Sea Cove Dev., L.L.C. v. Harbourside Cmty. Bank*, 387 S.C. 95, 98, 691 S.E.2d 158, 159 (2010) (stating that the lender statute of frauds "prohibits certain legal and equitable actions arising out of the loan of money where there is no writing evidencing *the parties'* alleged agreement" (emphasis added)).

investors, the trial court aptly noted that, at its core, this case revolves around the contractual relationship between BB & T and its customer, Skywaves. That relationship is the subject of the suit between Skywaves and BB & T, which is not before us. Rather, our inquiry here is confined to whether these plaintiffs—as investors, directors, officers, and shareholders of Skywaves—may maintain a lawsuit separate from the one brought by the company itself, for what amounts to breach of the contract between Skywaves and BB & T. We find there is no basis in the law for a finding that BB & T owed any duty to Appellants, as non-customer investors, sufficient to support their claims for negligence, negligent misrepresentation, or fraudulent inducement.[6]

 It is well-established that banks owe a limited duty of care to their *customers*. *See, e.g., Burwell v. S.C. Nat'l Bank,* 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986) (finding that a bank-customer relationship is merely a lender-borrower relationship and is not fiduciary in nature unless the bank undertakes to advise its customers as part of the services that the bank offers); *Regions Bank v. Schmauch,* 354 S.C. 648, 671, 582 S.E.2d 432, 444 (Ct.App.2003) (explaining that, if the bank does create a fiduciary relationship with its customer, the bank must only "disclose material facts that may affect its customer's interests"). We find no reason to extend a bank's limited duty to non-customers under these facts, where the non-customers' claims are premised on disputed contractual obligations between a bank and its customer, but the non-customer is not an intended third-party beneficiary to that contract.[7] *Cf. Florentine Corp. v. PEDA I, Inc.,* 287 S.C. 382, 386, 339 S.E.2d 112, 114 (1985) ("Where there is no confiden-

6. *See Thomasko v. Poole,* 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002) (stating that duty is one element of a negligence claim); *cf. Turner,* 392 S.C. at 122–23, 708 S.E.2d at 769 (explaining that, to state a claim for negligent misrepresentation or fraudulent inducement, a party must establish, *inter alia,* that he had a right to rely on a statement made by the opposing party).

7. Thus, despite Appellants' assertions to the contrary, the choice of law provision found in the factoring agreement and selecting North Carolina law is irrelevant as Appellants are neither parties nor intended third-party beneficiaries to the contract. *See Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 445, 494 S.E.2d 827, 833 (Ct.App.1997).

tial or fiduciary relationship and an arm's length transaction between mature, educated people is involved, there is no right to rely[, and the party has not stated a claim for negligent misrepresentation or fraudulent inducement]. This is especially true in circumstances where one should have utilized precaution and protection to safeguard his interests." (citing *Thomas v. Am. Workmen,* 197 S.C. 178, 182–83, 14 S.E.2d 886, 887–88 (1941))).[8]

Thus, we conclude that while Skywaves may be able to show that, as a BB & T customer, the bank owed the corporation a duty, Appellants are not BB & T's customers and therefore are not owed a similar duty. Accordingly, we affirm the trial court's ruling that Respondents were entitled to judgment as a matter of law as to all of Appellants' claims.

PLEICONES, HEARN, JJ., and Acting Justice JAMES E. MOORE, concur.

BEATTY, J., not participating.

---

8. Appellants are sophisticated investors who, between the six of them, invested almost $1.5 million in Skywaves over a protracted period of time. *Cf. Poco–Grande Invs. v. C & S Family Credit, Inc.,* 301 S.C. 323, 325, 391 S.E.2d 735, 736 (Ct.App.1990) (finding that a real estate business and a lawyer were "sophisticated and mature businessmen" who consequently had no right to rely on the alleged misrepresentations).