MCDONALD, J.:
**513 Benjamin Gecy appeals the circuit court's grant of summary judgment in favor of South Carolina Bank & Trust (Bank), Jaime Hamner, and Deborah Hamner (collectively, the Hamners), arguing summary judgment was improper because material questions of fact exist as to whether Bank intentionally interfered with the contracts between the Hamners and Gecy, **514 whether the Hamners breached their contracts with Gecy, and *753 whether Bank and the Hamners made negligent misrepresentations. Gecy further asserts the circuit court erred in declining to continue the summary judgment hearing so Gecy could compel discovery responses and take additional depositions. We affirm.
Facts and Procedural History
This case arises from a failed real estate and construction transaction between Gecy and the Hamners. In February 2010, the Hamners contracted to purchase 10 Meredith Lane, a parcel on a private road in Beaufort County, from Gecy for $150,000. Additionally, the Hamners contracted for Gecy to build them a house on the property for $156,900. Gecy referred the Hamners to Bank for financing. Later in February 2010, Bank informed Gecy that in order to approve the Hamners' financing application, all property owners on Meredith Lane needed to sign a road maintenance agreement (RMA).
According to Gecy, RMAs are generally only required for Veterans Affairs (VA) loans. Gecy contends Bank's own internal policies did not require the RMA; thus, under Gecy's theory, Bank misrepresented that the signed RMA was a requirement for approval of the Hamners' non-VA construction loan. Bank explained that the VA does not have a construction loan program, so the plan was for the Hamners' loan to begin as a conventional construction loan and roll over into a VA loan once construction was completed. Because the VA requires an RMA for its loans, Bank's policy in such situations is to require the RMA before closing on a construction loan when "the permanent loan would require it."
Closing on the transaction was originally scheduled for March 5, 2010, but when the closing did not occur, an automatic thirty-day extension took effect. On April 5-the date the extension expired-Gecy notified Bank that all necessary landowners had either signed or agreed to sign the RMA. However, neither Gecy nor the Hamners ever presented Bank with an RMA signed by all property owners. On April 9, 2010, the Hamners' attorney informed the closing attorney that the contracts were null and void because the Hamners were denied financing based, in part, on Gecy's failure to provide the signed RMA by April 5. Gecy then sued Bank for tortious **515 interference with contract and unfair trade practices, alleging Bank "directed or otherwise motivated" the Hamners away from their contracts with him. Separately, Gecy sued the Hamners for breach of contract. Finally, Gecy sued both Bank and the Hamners for civil conspiracy and negligent misrepresentation.
In March 2012, Bank moved for summary judgment-which the Hamners later joined-based in part on an affidavit from Diana Chalmers (Diana). Diana's affidavit stated she owned property on Meredith Lane and never signed the RMA, despite Gecy's repeated requests.
In July 2012, Gecy filed for bankruptcy, and the case was stayed until the bankruptcy discharge in November 2013. In February 2014, Gecy filed a pro se motion to compel discovery responses and a motion to continue the summary judgment hearing. In the motion for a continuance, Gecy asserted Diana's recent deposition testimony contradicted certain statements in her affidavit. Consequently, Gecy requested time to depose two additional witnesses: Diana's husband, Ed Chalmers, and "newly discovered witness" Robert Walters.[1]
The court denied Gecy's motion for a continuance and following a hearing, granted summary judgment in favor of Bank and the Hamners. At the subsequent hearing on his motion to reconsider, Gecy-now represented by counsel-argued his misrepresentation claim against Bank was valid, citing § 552 of the Restatement (Second) of Torts (1977). Gecy further argued the continuance should have been granted because he had actively prosecuted the case at all times, except during the bankruptcy stay. In response, Bank argued § 552 was inapplicable, and Kerr v. Branch Banking & Trust , 408 S.C. 328, 759 S.E.2d 724 (2014), was dispositive.
*754 In September 2014, the court denied Gecy's motion to reconsider but amended its previous order. The court found Kerr controlled and was a "complete bar" to Gecy's claims against Bank. Specifically, the court cited Kerr for the proposition that Gecy could not maintain an action against Bank **516 because he was not a party to the Hamners' financing application.[2] Thereafter, Gecy appealed the grant of summary judgment, but only with respect to the causes of action for intentional interference with contract, breach of contract, and negligent misrepresentation.
Standard of Review
"In reviewing an order for summary judgment, the appellate court applies the same standard which governs the trial court under Rule 56 of the South Carolina Rules of Civil Procedure." M & M Grp., Inc. v. Holmes , 379 S.C. 468, 473, 666 S.E.2d 262, 264 (Ct. App. 2008). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Id. (quoting Rule 56(c), SCRCP ). "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant, the non-moving party below." Id. (quoting Willis v. Wu , 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004) ). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." Id. (quoting David v. McLeod Reg'l Med. Ctr. , 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006) ). "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." Hancock v. Mid-S. Mgmt. Co. , 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).
Law and Analysis
A. Gecy's Claims Against Bank
1. Negligent Misrepresentation
In a claim for the tort of negligent misrepresentation where the damage alleged is a pecuniary loss, the essential **517 elements include: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.
Redwend Ltd. P'ship v. Edwards , 354 S.C. 459, 473, 581 S.E.2d 496, 504 (Ct. App. 2003).
Gecy primarily argues that § 552 of the Restatement (Second) of Torts validates his negligent misrepresentation cause of action-and Kerr is inapplicable-because Gecy was a Bank customer with open lines of credit. We disagree.
Kerr involved a company (Skywaves) that used BB&T to fund its capital needs pursuant to a factoring agreement. 408 S.C. at 329-30, 759 S.E.2d at 725. As Skywaves' business grew, it chose to enter a new and expanded factoring agreement with BB&T. Id. at 330-31, 759 S.E.2d at 725. Several months after entering the new agreement, a BB&T employee made a presentation to the appellants-who were already affiliated with Skywaves-and assured them BB&T would honor the new agreement. Id. at 331, 759 S.E.2d at 725. Based on these representations, the appellants invested in Skywaves. Id. A year later, BB&T ceased funding Skywaves, arguing Skywaves had defaulted under the terms of the new agreement. Id. Skywaves eventually sought bankruptcy protection and the appellants lost their investments.
*755 Id. The appellants, in their capacities as investors and Skywaves employees, sued BB&T for negligent misrepresentation, fraudulent inducement, negligence, and violation of the Unfair Trade Practices Act. Id. at 331, 759 S.E.2d at 725-26. The negligent misrepresentation claim was based upon the BB&T employee's presentation. Id. at 332, 759 S.E.2d at 726. The circuit court granted summary judgment to BB&T, and the appellants appealed the court's findings as to the causes of action for negligence, negligent misrepresentation, and fraudulent inducement. Id.
Our supreme court noted the appellants were essentially trying to sue BB&T for breaching a contract between BB&T
**518 and its customer, Skywaves. Id. at 332-33, 759 S.E.2d at 726. Rejecting this claim, the supreme court held there was "no basis in the law for a finding that BB&T owed any duty to [a]ppellants, as non-customer investors, sufficient to support their claims." Id. at 333, 759 S.E.2d at 726. The court acknowledged that banks owe a limited duty of care to their customers, but explained this duty does not extend to non-customers when "the non-customers' claims are premised on disputed contractual obligations between a bank and its customer, but the non-customer is not an intended third-party beneficiary to that contract." Id. at 333, 759 S.E.2d at 726-27.
Likewise, Kerr bars Gecy's negligent misrepresentation claim against Bank. Assuming Gecy's allegations concerning the non-existence of both a VA loan and an RMA policy are true for the purposes of summary judgment, Gecy still holds a position similar to that of the investors in Kerr -he is attempting to proceed with a cause of action that, at its core, concerns a financing application between Bank and its customers, the Hamners. In this context, Bank owed no duty of care to Gecy-a non-customer for purposes of the Hamners' contract-when evaluating the Hamners' financing application. Thus, only the Hamners could properly pursue Bank for any irregularities or misrepresentations. See Redwend , 354 S.C. at 473, 581 S.E.2d at 504 (requiring as an element of a negligent misrepresentation claim that "the defendant owed a duty of care to see that he communicated truthful information to the plaintiff").
Further, we disagree with Gecy that § 552 applies to these facts. Section 552 provides in pertinent part:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered **519 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
Restatement (Second) of Torts § 552 (1977).
Most of South Carolina's jurisprudence concerning § 552 was summarized in First Federal Savings Bank v. Knauss , 296 S.C. 136, 140, 370 S.E.2d 906, 908 (Ct. App. 1988) :
The concept of negligent misrepresentation as described in the Restatement (Second) of Torts is not new to South Carolina. This court recognized the existence of a duty to exercise due care in giving information when the defendant had a pecuniary interest in the transaction. Winburn v. Insurance Company of North America , 287 S.C. 435, 339 S.E.2d 142 (Ct. App. 1985). The South Carolina Supreme Court has recognized consultants may be liable in negligence to non-contracting parties who have reasonably relied upon their reports in taking action. South Carolina State Ports Authority v. Booz-Allen & Hamilton Inc. , 289 S.C. 373, 346 S.E.2d 324 (1986).
*756 The most recent case cited by Gecy to support his § 552 argument is ML-Lee Acquisition Fund, L.P. v. Deloitte & Touche , in which our supreme court adopted § 552's standard of liability as to an accountant's duty to exercise reasonable care or competence in obtaining or communicating information. 327 S.C. 238, 241 n.3, 489 S.E.2d 470, 471 n.3 (1997). The court stated, "To establish liability under Restatement § 552, the party seeking to recover for a negligent misrepresentation must show he justifiably relied on the information communicated by the accountant." Id. at 241, 489 S.E.2d at 472.
Thus far, South Carolina has applied § 552 to non-contracting third-parties only in the accounting and consulting contexts. See also Johnson v. Robert E. Lee Acad., Inc. , 401 S.C. 500, 506 n.6, 737 S.E.2d 512, 515 n.6 (Ct. App. 2012) (noting South Carolina has recognized an accountant may have a duty to a third party under a negligent misrepresentation cause of action based on § 552 ); Booz-Allen , 289 S.C. at 376-77, 346 S.E.2d at 326 (stating when a consulting firm is hired by an **520 entity to critique that entity's competitors for marketing purposes, the consulting firm has a duty to exercise due care and accurately report factual data about the competitors). Applying § 552 in such professional situations comports with § 552's intent to prevent the supplying of "false information for the guidance of others in their business transactions ." (emphasis added). Conversely, such language neither envisions nor applies to transactions like the Hamner contract, for which Bank provided information about its own financing requirements to a third party in a real estate transaction. Therefore, § 552 is inapplicable, and the circuit court's grant of summary judgment as to negligent misrepresentation was proper.[3]
2. Tortious Interference with Contractual Relations
Gecy contends that through discovery, he learned the Hamners did not apply for a VA loan; thus, he argues Bank's statements that it required a signed RMA were false. Gecy further asserts Bank refused to provide him with any guidelines or policies confirming Bank's RMA requirement. Finally, Gecy argues the information he discovered about Bank's separate transaction with Walters demonstrates the falsity of Bank's assertions about any RMA requirement.
"To establish a cause of action for tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages." Eldeco, Inc. v. Charleston Cty. Sch. Dist. , 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007). "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference **521 by third parties." Dutch Fork Dev. Grp. II, LLC v. SEL Properties, LLC , 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012) (quoting Threlkeld v. Christoph , 280 S.C. 225, 227, 312 S.E.2d 14, 15 (Ct. App. 1984) ).
Unlike Gecy's negligent misrepresentation claim, his cause of action for intentional interference with contractual relations does not require a duty analysis. Nevertheless, we hold summary judgment was proper because, in the light most favorable to Gecy, the evidence here established that Bank required a signed RMA for the Hamners to obtain financing. Bank was within its rights to set its own lending policies, and it informed Gecy clearly about the need for an RMA, even extending the closing date to obtain this compliance. Bank was not required to provide a written policy to verify its own underwriting requirement. It is undisputed that Gecy (and the Hamners) failed to obtain an RMA signed by all necessary landowners before *757 the expiration date of the closing extension. Thus, Gecy has failed to show an issue of material fact demonstrating that Bank intentionally procured any breach of the contracts without justification. See Eldeco , 372 S.C. at 480, 642 S.E.2d at 731 (listing the elements of a tortious interference with contractual relations cause of action). Evidence about the Walters transaction-an unrelated transaction that occurred at a different location-does not give rise to the necessary "mere scintilla" or even an inference that Bank intentionally procured the breach of the Hamners' contracts with Gecy.
B. Gecy's Claims Against the Hamners
1. Breach of Contract
Gecy contends the Hamners' failure to perform pursuant to their contracts was not excused by Gecy's failure to comply with Bank's RMA requirement. Gecy asserts the Hamners refused to consider other financing options that had no RMA requirement and "disappeared for all intents and purposes" during the period immediately before the April 5, 2010 deadline so the closing could not occur as scheduled.
"In an action for breach of contract, the burden is on the plaintiff to prove the contract, its breach, and the damages caused by such breach." Allegro, Inc. v. Scully , 418 S.C. 24, 34, 791 S.E.2d 140, 145 (2016). "A condition precedent **522 is an act which must occur before performance by the other party is due." Alexander's Land Co. v. M & M & K Corp. , 390 S.C. 582, 596, 703 S.E.2d 207, 214 (2010) (citation omitted). "If a contract contains a condition precedent, that condition must either occur or it must be excused before a party's duty to perform arises." McGill v. Moore , 381 S.C. 179, 187, 672 S.E.2d 571, 575 (2009).
We find the circuit court properly granted summary judgment on the breach of contract cause of action. Both the real estate contract and the construction contract had checked boxes under the "Method of Payment" headings indicating the contracts were "Subject to Financing." Both contracts also contained language stating, "Buyer's obligation under this agreement is contingent on Buyer obtaining said loan." Thus, financing was a condition precedent to the Hamners' performance of the contracts. See M & M Grp. , 379 S.C. at 477, 666 S.E.2d at 266 (stating "use of the language 'is contingent upon' is unequivocal and patently indicates the parties' respective obligations to buy and sell ... are contingent on [the buyer's] ability to secure financing"). We agree with the circuit court that the "uncontroverted testimony" shows Bank did not offer the Hamners financing. Accordingly, the contractual provisions excused the Hamners' lack of performance.[4] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 478, 666 S.E.2d at 267 ("The failure of one to perform under a contract because of his inability to obtain financing from a third party on whom he relied to furnish the money will not excuse performance, in the absence of a contract provision in that regard." (quoting Worley v. Yarborough Ford, Inc. , 317 S.C. 206, 209, 452 S.E.2d 622, 624 (Ct. App. 1994) ) ).
As to Gecy's allegation that the Hamners hindered the contracts by their conduct, we note there were provisions in the contracts stating the Hamners had a duty to "provide all documents or information requested by the lending company in a prompt and timely manner" and a duty to "take any **523 action that is needed or requested by Lender to process the loan application." Gecy admitted Jaime Hamner actively participated in attempting to obtain signatures for the RMA. There simply was no breach, nor any evidence to support the allegation that the Hamners "hindered" the contracts by their conduct.
2. Negligent Misrepresentation
Gecy asserts Jaime Hamner made false representations about the type of loan for which he applied, falsely indicated his willingness to close the transaction, and then *758 "disappear[ed] during the critical period leading up to the scheduled closing on April 5, 2010."
"A claim for negligent misrepresentation may be made when the misrepresented facts induced the plaintiff to enter a contract or business transaction." Armstrong v. Collins , 366 S.C. 204, 220, 621 S.E.2d 368, 376 (Ct. App. 2005). "There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." Quail Hill, LLC v. Cty. of Richland , 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010) (quoting AMA Mgmt. Corp. v. Strasburger , 309 S.C. 213, 223, 420 S.E.2d 868, 874 (Ct. App. 1992) ).
Gecy presented no evidence that the Hamners were anything but ready, willing, and able to perform pursuant to the contracts and close the transactions on either the original closing date, March 5, 2010, or the extended closing date, April 5, 2010. As noted above, Gecy admitted Jaime Hamner actively participated in attempting to obtain signatures for the RMA. It was only after Gecy failed to provide Bank with the signed RMA-and Bank thus declined to extend financing-that the Hamners told Gecy they no longer intended to complete the transactions. The contracts, contingent upon such financing, permitted the Hamners to do just that, and Gecy has failed to produce evidence of a negligently made false statement on which to predicate damages.
Further, even if Gecy could provide evidence of a false statement by the Hamners, his cause of action against them still fails as he did not justifiably rely upon any such misstatement. While it is true that "issues of reliance are **524 ordinarily resolved by the finder of fact, 'there can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter.' " McLaughlin v. Williams , 379 S.C. 451, 457-58, 665 S.E.2d 667, 671 (Ct. App. 2008) (quoting Gruber v. Santee Frozen Foods, Inc., 309 S.C. 13, 20, 419 S.E.2d 795, 800 (Ct. App. 1992) ).
C. Denial of Continuance and Motion to Compel
Gecy contends the grant of summary judgment should be "reversed as unfounded or premature" because the court denied his requests to depose two additional witnesses and denied by implication his motion to compel additional discovery.
We agree with the circuit court that Gecy's additional depositions and further discovery would not have "contribute[d] to the resolution of issues in the case." First, Ed Chalmers's deposition would have been relevant only to Gecy's breach of contract claim against the Hamners because Gecy sought to depose Ed to find out if he and Diana had agreed by email to sign the RMA. If they had, Gecy argues he could have made out "a prima facie case that everybody on that road had approved," and the Hamners could have proceeded with the closing. However, even if the Chalmers had agreed to sign the RMA, it would make no difference because no signed RMA was submitted before the expiration of the closing date extension. Without the RMA signed by all property owners on Meredith Lane, Bank declined to give the Hamners financing, and their non-performance was excused. Gecy admitted that the deposition would not establish Bank ever provided the financing.
Second, Robert Walters's deposition was unnecessary because he had no connection to this transaction. Walters participated in an unrelated transaction with Bank in 2012 that involved an unrelated road maintenance agreement; his deposition would have provided no evidence that Bank owed a duty to Gecy or that Bank intentionally inferred with the Gecy-Hamner transaction.
Significantly, the motions for summary judgment were heard nearly two years after the filing of Gecy's verified complaint. All parties had a full and fair opportunity to **525 develop the record. For these reasons, and because the additional depositions would not have changed the analysis of the merits of the summary judgment motions, the circuit court did not abuse its discretion by denying Gecy's motion for a continuance. See M & M Grp. , 379 S.C. at 474-75, 666 S.E.2d at 265 ("The grant or denial of a continuance lies *759 with the sound discretion of the trial court and such ruling will not be reversed absent a clear showing of abuse of discretion.").
Conclusion
For the foregoing reasons, the circuit court's decision is
AFFIRMED.
GEATHERS and HILL, JJ., concur.

According to Gecy, Walters participated in an unrelated transaction with Bank in December 2012; the Walters transaction involved a piece of property on Hester Lane, another private road. Gecy asserts no RMA was filed at the time of the Walters closing and, although a RMA was later filed, it was not signed by all neighboring landowners.

The amended order also removed a statute of frauds analysis set forth in the original summary judgment order.

We question whether Gecy's § 552 argument is preserved as Gecy appeared pro se at the summary judgment hearing and did not mention § 552. Gecy's counsel raised § 552 for the first time at the hearing on Gecy's motion to reconsider. See e.g. , Bank of New York v. Sumter County , 387 S.C. 147, 159, 691 S.E.2d 473, 479 (2010) ("It is axiomatic that an issue cannot be raised for the first time in a post-trial motion."). Moreover, even if § 552 were arguable here, Gecy has failed to set forth evidence that Bank provided "false information for the guidance" of anyone in this transaction. Gecy seems to suggest that Bank's requirement of an RMA signed by all property owners on the private road was "false" because an RMA should not be required for financing of the type sought by the Hamners. See infra , section A.2. We reject this contention.

Notably, when asked during his deposition about how the Hamners breached the contracts if the contracts were contingent upon financing, Gecy merely repeated his allegations that Bank made false statements about its RMA requirement. When asked again how the Hamners were responsible for Bank's actions, Gecy added, "That's a good question. Maybe Mr. Hamner might not be responsible here. Maybe it's the bank. Maybe Mr. Hamner's got a cause of action against the bank."