**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Angela D. Young, as Personal Representative for the Estate of Chellie Nixon, Appellant,

v.

Carolyn Johnson, as Personal Representative for the Estate of Samuel L. Davis, Respondent.

Appellate Case No. 2024-000444

———

Appeal From Marion County
H. Steven DeBerry, IV, Circuit Court Judge

———

Unpublished Opinion No. 2025-UP-418
Heard October 7, 2025 – Filed December 10, 2025

———

**AFFIRMED**

———

Danny Villacarlos Butler, of Butler Law, LLC, of Myrtle Beach, for Appellant.

Jon Rene Josey and Jeffrey L. Payne, both of Turner Padget Graham & Laney, PA, of Florence, for Respondent.

———

**PER CURIAM:** Angela Young, personal representative of the Estate of Chellie Nixon, argues the circuit court erred in affirming the probate court's grant of

summary judgment to Carolyn Johnson, the personal representative of the Estate of Samuel Davis.  Young contends a genuine dispute of material fact exists as to the ownership of the Young and Young Funeral Home (the Funeral Home) in Hartsville.  We affirm.

**Facts and Procedural History**

Harold Young and his wife, Dorothy, founded the Funeral Home in 1947.  Samuel Davis started working at the Funeral Home—doing small tasks, such as taking out the trash—when he was ten years old.  Eventually, Davis became an assistant at the Funeral Home.  To Davis's knowledge, the Youngs never set up a corporation or any other type of business entity to operate the Funeral Home.

After Harold suffered a heart attack in 1976, Davis took over most of the responsibilities of operating the Funeral Home.  In 1978, Harold died following another heart attack.  Davis became vice president of the Funeral Home, and Harold and Dorothy's daughter, Chellie Nixon, became the president.

Dorothy, who inherited all of Harold's assets, died in 1979.  Dorothy's will named Nixon as her only heir.  Although the Funeral Home was listed as an asset of Dorothy's estate, no shares were referenced as jointly owned stocks or bonds.

Davis testified in his deposition that he overheard a discussion between Harold, Harold's attorney, and other "community leaders" in which Harold contemplated giving Davis thirty-five percent of the Funeral Home but noted he needed to discuss his plan with Nixon.  Davis claimed this conversation occurred shortly before Harold died and that soon after Harold's death, "Chellie agreed to give me the 35 percent under her own freewill."

On April 9, 1979, Nixon and Davis filed articles of incorporation with the South Carolina Secretary of State, creating Young and Young Funeral Home, Inc. (the Funeral Home Corporation) to operate the business.  Pursuant to this filing, Nixon owned sixty-five percent of the shares and Davis owned thirty-five percent.  Davis testified that Nixon had no active role in the Funeral Home after the formation of the Funeral Home Corporation.

Minutes from a March 19, 1982 meeting of the Funeral Home Corporation's shareholders state Nixon sold her remaining shares to Davis for $65,000.  Davis testified that he "begged [and] pleaded" with Nixon to keep her shares but she was having health problems and wanted to sell the shares; thus, he bought Nixon's

shares to prevent her from selling them to someone else. Davis took out a loan from the Bank of Hartsville to purchase Nixon's shares.

On February 14, 2017, Chellie Nixon died intestate, and her Estate attempted to obtain information from Davis regarding ownership of the Funeral Home Corporation. Davis did not respond to these initial requests. According to Nixon's daughter, Angela Young, Nixon's children did not learn that their mother no longer owned an interest in the Funeral Home until after her death.

On February 22, 2018, Nixon's Estate subpoenaed Davis for "[a]ll documents which evidence the transfer of ownership of Young and Young Funeral Home, Inc. from Harold Young to Samuel L. Davis or the current owner(s) of Young and Young Funeral Home, Inc."

In 2019, Carolyn Johnson, Davis's niece, began working full time at the Funeral Home. Davis initially hired Johnson as an office assistant, and she helped with filing claims, recording bills, and other clerical duties. In October 2019, Johnson began her funeral director apprenticeship under Davis and started taking on other responsibilities. Ultimately, Johnson obtained her funeral director's license and became the director of operations at the Funeral Home.

In 2020, Johnson undertook a project of purging old files stored in a warehouse behind the Funeral Home. In her deposition, Johnson testified that only old files related to decedents and funeral services were purged and claimed no corporate documents or financial records were destroyed. Decedent files from the past twelve years were retained. Johnson stated she first saw the 2018 subpoena when she was going through the warehouse but admitted she did not discuss it with Davis at that time. Johnson testified she was unaware of any lawsuit when she began purging the warehouse documents. She explained that when she later asked Davis about the subpoena, he responded, "[Attorney] Jim Cox handled it. He has what they want and handled it."

On October 15, 2020, Nixon's Estate filed a motion seeking an order and rule to show cause addressing Davis's failure to respond to the Estate's 2018 subpoena. On December 12, 2020, Davis provided Nixon's Estate with "the Secretary of State's Certificate of Dissolution of Young and Young Funeral Home, Inc."; the Funeral Home Corporation's balance sheet from March 1982 showing the last month in which Nixon received a distribution; and several affidavits addressing ownership of the Funeral Home.

On November 11, 2021, Angela Young, on behalf of Nixon's Estate, filed an action in the probate court seeking a declaration as to the ownership of the Funeral Home and raising a claim of fraud against Davis. Davis timely answered.

Davis died in October 2022, and his Estate was substituted as a party. Johnson, as personal representative of Davis's Estate, moved for summary judgment, arguing there was no genuine issue of material fact as to the ownership of the Funeral Home Corporation. Johnson further noted Young had provided no evidence that anyone other than Davis owned an interest in the Funeral Home Corporation.

Following a hearing, the probate court granted Johnson's summary judgment motion, finding there was no evidence to establish Nixon owned any shares in the Funeral Home Corporation at the time of her death. The probate court's July 17, 2023 order noted Johnson presented several pieces of evidence demonstrating Davis had been the sole member of the Funeral Home Corporation since 1982.[1]

Young timely filed a Rule 59(e), SCRCP, motion, which the probate court denied. She then appealed to the circuit court. Following a January 29, 2024 hearing, the circuit court affirmed the probate court by Form 4 order, and Young timely appealed to this court.

## I. Spoliation of Evidence

Young argues the probate court erred in granting summary judgment by failing to consider or reference the potential spoliation of evidence resulting from Johnson's purging of the warehouse documents. We disagree.

The probate court denied Young's motion for sanctions in its March 2023 order. As noted above, the probate court found Young offered no evidence that Davis destroyed documents related to the Funeral Home's ownership. Because the probate court previously rejected Young's claim that material evidence was spoliated in ruling on the motion for sanctions, it was unnecessary for the court to further reference the spoliation argument in its summary judgment order.

---

[1] The probate court had earlier denied Young's motion for sanctions related to its spoliation of evidence claim. The probate court found no evidence to indicate matters pertinent to the ownership of the Funeral Home Corporation were destroyed during Johnson's purging of the warehouse.

## II. Ownership of the Funeral Home

Young next argues the probate court erred in granting summary judgment because a genuine issue of material fact exists as to whether Nixon assigned a thirty-five percent ownership interest in the Funeral Home to Davis. She further contends a genuine issue of material fact exists as to whether Davis later purchased Nixon's remaining sixty-five percent interest. We disagree.

Rule 56(c) "provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) (alterations in original) (quoting Rule 56(c), SCRCP). "The moving party may discharge the burden of demonstrating the absence of a genuine issue of material fact by pointing out the absence of evidence to support the nonmoving party's case." *Bennett v. Invs. Title Ins. Co.*, 370 S.C. 578, 588, 635 S.E.2d 649, 654 (Ct. App. 2006). "Once the moving party carries its initial burden, the opposing party must do more than rest upon the mere allegations or denials of his pleadings, but must, by affidavit or otherwise, set forth specific facts to show that there is a genuine issue for trial." *Lord v. D & J Enters., Inc.*, 407 S.C. 544, 553, 757 S.E.2d 695, 699 (2014); *see also* Rule 56(e), SCRCP.

"A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *Gecy v. S.C. Bank & Tr.*, 422 S.C. 509, 516, 812 S.E.2d 750, 754 (Ct. App. 2018) (quoting *M & M Grp., Inc. v. Holmes*, 379 S.C. 468, 473, 666 S.E.2d 262, 264 (Ct. App. 2008)).

Here, summary judgment was proper because Young presented no evidence that Nixon still owned an interest in the Funeral Home upon her death. Young's affidavit explains her belief that Nixon owned the Funeral Home was supported by the fact that Dorothy's will named Nixon as her sole heir, and Nixon never mentioned selling the Funeral Home to her children. But Nixon's failure to inform her children that she sold her remaining shares is not evidence that Nixon still owned an interest in the business (or property) at the time of her death. Young's affidavit states only that Nixon did not mention selling the Funeral Home; she does not claim Nixon made any affirmative claim of ownership.

Notably, certified public accountant Peyton Warren, who performed accounting services for the Funeral Home until 2018, testified Davis was listed as the only shareholder for the Funeral Home Corporation's tax returns and Davis provided him with all Funeral Home financial information. As far as Warren recalled, Davis had always been the sole shareholder, and Warren had never heard of Nixon. Internal Revenue Service Schedule G Forms for the Funeral Home from 2013 to 2018 list Davis as the sole shareholder.

The Funeral Home Corporation's 1979 articles of incorporation recognize Davis as a thirty-five percent shareholder and Nixon as a sixty-five percent shareholder, but there are no signatures on the initial stock certificates. A stock certificate included in the record indicates sixty-five shares in the Funeral Home were transferred from Nixon to Davis; this certificate was signed by Davis but not Nixon. Finally, meeting minutes dated March 19, 1982, indicate Nixon sold her shares to Davis.

We recognize the deposition of Ernestine Boston, Davis's ex-wife, calls into question the validity of the 1982 meeting minutes. But Boston made no statements suggesting Davis was *not* the owner of the Funeral Home (during their marriage or otherwise). In fact, Boston claimed Davis changed when "he received ownership of the [F]uneral [H]ome" and began spending a lot of money after Harold's death. Boston also recalled Davis being angry when Harold died without a will because "I guess in the back of his mind I guess he probably figured that it was going to be left some portion of it to him . . . ." Boston further admitted, "There was a lot of things [Davis] didn't tell me."

Summary judgment was proper because Young failed to present evidence from which an inference may be drawn to suggest Chellie Nixon still owned any interest in the Funeral Home at the time of her death. As no genuine issue of material fact related to ownership exists, the circuit court properly affirmed the probate court's grant of summary judgment.

**AFFIRMED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**